UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INSURANCE COMPANY OF NORTH
AMERICA, as subrogee of
LENNY BARTHLE,

      Plaintiff,

vs.                                              Case No. 8:04-CV-127-T-27MAP

THE UNITED STATES OF AMERICA,

      Defendant.
_____/

**ORDER**

**BEFORE THE COURT** is the United States' Dispositive Motion to Dismiss and/or Motion for Summary Judgment (Dkt. 21) and Plaintiff's Response in Opposition (Dkt. 26). Upon consideration, the United States' motion is GRANTED.

Insurance Company of North America ("Plaintiff"), as subrogee, filed this action against the United States alleging that a 110' Coast Guard cutter, the "KNIGHT ISLAND", created a wake that damaged subrogor Lenny Barthle's 30' recreational vessel, while Barthle's vessel was moored on the western side of "Beer Can Island" in Tampa Bay.[1] The United States has moved to dismiss the case, arguing that it is immune from suit pursuant to the "discretionary function" exception found in 28

---

[1] Plaintiff alleges that at the time of the incident, the KNIGHT ISLAND was proceeding at "an excessive rate of speed", "resulting in an excessive wake". (Dkt. 1, ¶ 11) For the purpose of determining subject matter jurisdiction, and consistent with the standard applicable to summary judgment motions, Plaintiff's allegation will be taken as true.

1

U.S.C. § 2680(a) and that this Court therefore lacks subject matter jurisdiction.[2]

## Applicable Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Nolen v. Boca Raton Community Hospital, Inc.*, 373 F.3d 1151, 1154 (11th Cir. 2004).

---

[2] The United States, arguing lack of subject matter jurisdiction, seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(1) or alternatively, summary judgment pursuant to Fed.R.Civ.P. 56. This Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) and the United States has consented to suit via the Suits in Admiralty Act, 46 U.S.C. §§ 741-752 and the Public Vessels Act, 46 U.S.C. §§ 781-790. The issue, therefore, is whether the Court's subject matter jurisdiction is abrogated by the discretionary function exception. Accordingly, the United States' motion will be addressed as a motion for summary judgment, rather than a Rule 12(b)(1) factual attack on subject matter jurisdiction.

**Discussion**

The United States enjoys sovereign immunity from suit unless it consents to be sued or waives sovereign immunity. *United States v. Nordic Village, Inc*., 503 U.S. 30, 34-35 (1992). If sovereign immunity applies, this Court lacks subject matter jurisdiction. *United States v. Testan*, 424 U.S. 392, 399 (1976).  The Suits in Admiralty Act, 46 U.S.C. § 741 *et seq*., pursuant to which Plaintiff filed this case, includes an explicit waiver of sovereign immunity. *See* 46 U.S.C. app. § 782; *Mid-South Holding Company, Inc., v. United States,* 225 F.3d 1201, 1203 (11th Cir. 2000).[3] However, the government's waiver of sovereign immunity in admiralty actions is "subject to the 'discretionary function' exception identified in the FTCA, 28 U.S.C. § 2680(a)." *Id.* at 1204. Section 2680(a), in which the "discretionary function" exception is found, provides that the United States retains sovereign immunity against:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The "discretionary function" exception essentially narrows the waiver of sovereign immunity where a party challenges public policy driven conduct and governmental decision-making. *United States v. Gaubert*, 499 U.S. 315, 325 (1991). The exception applies to suits brought in admiralty. *See Williams v. United States*, 747 F.2d 700 (11th Cir. 1984).  Pursuant to the exception, the United States "is not subject to maritime tort claims based upon the alleged misfeasance or nonfeasance of

---

[3] The United States has consented to be sued in admiralty by virtue of the Suits in Admiralty Act, 46 U.S.C. §§ 741-752, and the Public Vessels Act, 46 U.S.C. §§ 781-790. *See Basic Boats, Inc. v. United States*, 352 F.Supp. 44, 46 (E.D. Va. 1972).

'discretionary functions' by federal agencies or employees." *Drake Towing Company, Inc. v. Meisner Marine Constr. Co.*, 765 F.2d 1060, 1063 (11th Cir. 1985). "[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id*. at 1064 (citations omitted). Pursuant to the "discretionary function" exception, admiralty actions which challenge discretionary functions of the government are barred by sovereign immunity. *See United States Fire Ins. v. United States,* 806 F.2d 1529, 1535 (11th Cir. 1986).

When determining whether the discretionary function exception bars suit against the United States, a two-part test is implemented. *See Cohen v. United States*, 151 F.3d 1338 (11th Cir. 1998). First, "we consider the nature of the conduct and determine whether it involves 'an element of judgment or choice.'" *Id.* at 1341 (citations omitted). Second "if the conduct at issue involves the exercise of judgment, we must determine whether that judgment is grounded in considerations of public policy." *Id*. The focus is on the nature of the conduct and whether it is susceptible to policy analysis. *Id.* It must be determined whether the "judgment is of the kind that the discretionary function exception was designed to shield." *See Mid-South Holding Company, Inc. v. United States*, 225 F.3d 1201, 1205 (11th Cir. 2000). When applicable, the exception abrogates federal subject matter jurisdiction under the Suits in Admiralty Act. *See Williams*, 581 F.Supp. at 848-55.

    1.    <u>The Coast Guard's actions involved "an element of judgment or choice"</u>.

The United States contends it is shielded from liability under the discretionary function exception because the Coast Guard's actions on the day in question were taken while enforcing a 1,000-yard security zone around the M/V SOLARO, a 592' Anhydrous Ammonia (NH3) tanker, which had been identified as the type of vessel that could be a potential target of subversive activity. The United States argues that in an effort to combat terrorism, the Coast Guard was given the

discretion to determine when, where, and how to establish and enforce floating security zones around vessels identified as potential targets of subversive activity.

In support of its argument, the United States relies on 33 U.S.C. §1226(b)(1), which provides that the Secretary "may" establish safety zones "to prevent or respond to acts of terrorism". Coast Guard Lt. Salcido avers that "[p]ost September 11, 2001 . . . Commanding Officers . . . were given discretion to use their own best judgment to take action if a sudden threatening situation arouse against a Coast Guard asset or a vessel or facility the Coast Guard was escorting or guarding." (Dkt. 22, Salcido Aff., ¶ 4).

Here, no statute or regulation prescribed the manner in which the Coast Guard was to implement its floating safety zones around vessels identified as potential targets of subversive activities.[4] As averred by Lt. Huff, it was up to the Commanding Officers to make those decisions based on their judgment. The United States' decision to implement floating safety zones for certain types of vessels and the decision to implement a safety zone around the SOLARO on the day in question, including the decision regarding the positioning of the KNIGHT ISLAND, therefore, involved an element of judgment or choice.

2. *The judgment exercised is related to policy considerations and is the kind that the discretionary function exception was designed to shield.*

Plaintiff argues that the KNIGHT ISLAND's excessive speed was "ordinary operational negligence" which falls outside the protection afforded by the discretionary function exception. This argument is unpersuasive for several reasons.

---

[4] "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 323 (quotations and citations omitted).

First, in *United States v. Gaubert*, the Supreme Court, in discussing the applicability of the discretionary function exception, dismissed any distinction between operational acts and policymaking or planning functions. *See United States v. Gaubert*, 499 U.S. 315 (1991).[5] "A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions." *Id.* at 325. "Discretionary conduct is not confined to the policy or planning level." *Id.* Accordingly, post *Gaubert*, the operational acts of a government agent may be protected by the discretionary function exception.

Second, under the rationale of *Mid-South Holding Company,* Plaintiff's argument that the Coast Guard's actions were unrelated to policy considerations is unpersuasive. In *Mid-South*, during the course of a Coast Guard search of a vessel for contraband, the searching crew either disconnected an electrical cord powering a vessel's bilge pump or failed to re-connect it after the search. Rejecting the vessel owner's argument that "the record does not establish that the agents searching the vessel made an affirmative decision to disconnect the electrical cord as part of their search, thereby dissociating the act from the agent's exercise of discretion in pursuit of the objectives of the search", the court reasoned that the focus was on the nature of the actions taken and whether those actions were susceptible to policy analysis, rather than on the agent's subjective intent. Considering the agent's conduct objectively, the court concluded that "disconnecting the electrical cord was

---

[5] Prior to *Gaubert*, cases drew a distinction between operational acts and policymaking or planning functions when determining whether the discretionary function exception applied. *See e.g., Drake*, 765 F.2d at 1064 (the government may be sued "for negligence in the nondiscretionary execution of discretionary decisions"; "negligence in their maintenance and operation implicates operations functions and is actionable"); *United States Fire Ins. v. United States,* 806 F.2d 1529, 1535 (11th Cir. 1986) ("[a] governmental act is discretionary and therefore shielded from liability if it is performed 'at a planning rather than operational level and involve[s] considerations more or less important to the practicability of the Government's . . . program") (citations omitted).

*conceivably* in furtherance of the search" and that "the allegedly negligent act, regardless of the impetus, qualifies as a discretionary function within the scope of the exception." *Mid-South*, 225 F.3d at 1207. The Court reasoned that even though the agent's acts were "mundane or [ ] disengaged from any substantial policy consideration, . . . [they] nonetheless [were] critical to the performance of the discretionary scheme and, accordingly, [ ] entitled to the protection of the discretionary function exception". *Id.*

At the time Barthle's vessel was damaged, the KNIGHT ISLAND was not responding to an actual or perceived threat. However, Lt. Huff, the Commanding Officer of the KNIGHT ISLAND, avers in his affidavit that his vessel was performing a security escort for the SOLARO and was prepared to take whatever steps necessary to ensure her safety, including positioning the KNIGHT ISLAND between the SOLARO and any perceived threat. Given the Coast Guard's policy driven authority to establish safety zones "to prevent or respond to acts of terrorism", as promulgated by 33 U.S.C. § 1226(b)(1), and the discretion vested in the Commanders of Coast Guard cutters assuming that responsibility, the Commander's judgment in the operation of the KNIGHT ISLAND is strongly presumed to have been grounded in considerations of public policy. *See Gaubert*, 499 U.S. at 324 ("... if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations;" "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion").

Lieutenant Huff avers that he was "given instructions to be on heightened awareness and to respond to any potential threats, including pleasure and commercial boats entering the security zone, in whatever manner [he] deemed appropriate given the threat." He positioned the KNIGHT ISLAND in order to "respond quickly if a potential threat should materialize". (Dkt. 22, Huff Aff., ¶ 2- 4). The discretion of the Commanding Officers, such as Lt. Huff, was therefore "critical to the performance of the discretionary scheme and, accordingly, . . . entitled to the protection of the discretionary function exception". *See Mid-South,* 225 F.3d at 1207.[6]

Establishing a safety zone for the SOLARO and maintaining it while escorting her through Tampa Bay are "part and parcel of the inherently policy-laden endeavor" of providing security for this country's ports and maritime interests. *See Cohen,* 151 F. 3d at 1344 ("[d]eciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons"). This case exemplifies the type of case Congress must have intended to be protected by the discretionary function exception to the waiver of sovereign immunity. If the Coast Guard's exercise of discretion, albeit negligent, was not protected from suit, the Coast Guard's policy concerning matters of national security would be subject to judicial "second guessing", thereby undermining the purpose of the discretionary function exception. Accordingly, the Coast Guard's

---

[6] Given that the objective of the KNIGHT ISLAND's mission was to escort the SOLARO and provide a "floating safety zone" for its protection, operating even at an excessive rate of speed in positioning the KNIGHT ISLAND was *conceivably* in furtherance of that mission. Lt. Huff describes being in a position to respond to potential threats, including positioning the KNIGHT ISLAND between any potential threat and the vessel being escorted. Even if the Commanding Officer abused his discretion in operating the KNIGHT ISLAND at an excessive rate of speed, thereby subjecting civilian vessels such as the insured's to property damage, the Officer's abuse of discretion is not actionable. *See Mid-South*, 225 F.3d at 1207, n. 8.

conduct, notwithstanding the resulting wake, is immune from suit. Therefore, it is

**ORDERED AND ADJUDGED** that the United States' Motion for Summary Judgment (Dkt.21) is GRANTED. The Clerk is directed to deny any motions as moot and close this case.

**DONE AND ORDERED** in chambers this 23rd day of June, 2005.

<u>/s/ James D. Whittemore</u>
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record